IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIAM THOMAS CRANE,               )
                                    )
          Petitioner,               )
                                    )
     v.                             )     Civil Action No. 2:16cv399-MHT
                                    )            [WO]
UNITED STATES OF AMERICA,           )
                                    )
          Respondent.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is William Thomas Crane's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Cv. Docs. # 2 & 3.[1]

## I.  PROCEDURAL AND FACTUAL BACKGROUND

In April 2014, a federal grand jury in the Middle District of Alabama returned a superseding indictment charging Crane and five others with conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Cv. Doc. # 9-1.  Crane's case came to trial in January 2015.

The Government presented evidence showing that Crane was part of a largescale methamphetamine distribution ring operating throughout Alabama.  *See* Cv. Doc. # 9-2. Crane, who owned an auto body shop in Crossville, Alabama, would install hidden compartments in motor vehicles that were driven to California by members of the

---

[1] References to document numbers are to the pleadings, motions, and other materials in the court file as designated by the Clerk of Court on the docket sheet in this civil action ("Cv. Doc. #") or in the underlying criminal case ("Cr. Doc. #"), Criminal Case No. 2:14cr23-MHT.  Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

conspiracy.  In California, large quantities of methamphetamine obtained from suppliers were secreted in the hidden compartments of the vehicles, which were then driven back to Alabama.  When  the methamphetamine arrived in Alabama, Crane would assist in removing it from the hidden compartments and would place money from his drug dealing in the compartments.

In April 2013, a member of the conspiracy, Phillip Burgin, was arrested by Oklahoma authorities after a traffic stop of the vehicle he was driving led to the discovery of approximately 30 pounds of methamphetamine in a hidden compartment Crane had installed in the vehicle.  Cv. Doc. # 9-2 at 13–44.  Burgin had picked up the methamphetamine from a supplier in California and was returning to Alabama with the drugs when he was arrested.  *Id*. at 42–44.

After his arrest, Burgin agreed to participate in a controlled delivery of two pounds of the methamphetamine, monitored by law enforcement officers, to coconspirator Stephanie Ausban in a mall parking lot near Birmingham, Alabama.  Cv. Doc. # 9-2 at 49–54 & 106–08.  After meeting Ausban in the mall parking lot, Burgin switched vehicles with her, leaving Ausban the vehicle with the two pounds of methamphetamine secreted in a hidden compartment.  *Id*. at 53 & 59–60.

Officers monitoring the transaction followed Ausban to some apartment buildings in Crossville, where they saw Ausban meet up with Crane.  Cv. Doc. # 9-2 at 60–61.  The officers then observed Crane and Ausban leave the apartments in separate vehicles, with Ausban following Crane.  *Id*.  The officers followed the vehicles to Crane's auto body shop in Crossville.  *Id.* at 61–63.  Shortly after Crane and Ausban arrived at the shop, the officers

closed in and arrested the two as they were attempting to access the hidden compartment in the vehicle containing the drugs. *Id*. at 62–65 & 91. In Crane's pants pocket, officers found a small plastic bag containing approximately one ounce of methamphetamine. *Id*. at 65 & 118–19. In a cloth bag on the ground near Crane, officers found $38,500 in currency. *Id*. at 63–65. Crane told officers he intended to use the money to buy the two pounds of methamphetamine in the vehicle driven by Ausban. *Id*. at 65–66 & 128. A subsequent search of Crane's residence uncovered more methamphetamine, and the search of a storage unit near Crane's residence (with Crane's consent) uncovered an additional $47,395 in currency. *Id*. at 116–17.

During a custodial interview, Crane admitted to investigators that he maintained a livelihood by purchasing methamphetamine and then reselling it. Cv. Doc. # 9-2 at 127–28. Crane told investigators he had been unemployed for several years and that dealing methamphetamine was his only means of making a living. *Id*. at 128–29. Crane also stated that the money he kept in the storage unit were proceeds from his methamphetamine sales that he used to pay for more methamphetamine, which he would then resell. *Id*. at 128. Crane told investigators that his supplier was an individual with whom he had only ever spoken on the telephone and whom he knew only as "Boss." *Id*. at 125–26.

Investigators determined that "Boss" was Alberto Trejo, a drug dealer and convicted murderer incarcerated by the Alabama Department of Corrections. Cv. Doc. # 9-2 at 109–

12; Cv. Doc. # 9-3 at 7–10.  Trejo was the leader of the methamphetamine distribution ring, which had as members Crane, Burgin,[2] Ausban, and others.

On January 13, 2015, the jury returned a verdict finding Crane guilty as charged in the indictment of conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine.  Cv. Doc. # 9-3 at 31–32.  After a sentencing hearing on April 21, 2015, the district court sentenced Crane to 200 months' imprisonment.  Cv. Doc. # 9-5 at 2–3.

Crane appealed, arguing that the district court erred in instructing the jury that the prosecution was required to prove venue by a preponderance of the evidence only.  *See* Cv. Doc. # 9-6.  On December 7, 2015, the Eleventh Circuit issued an opinion affirming Crane's conviction and sentence.  Cv. Doc. # 9-7; *see United States v. Crane*, 635 F. App'x 611 (11th Cir. 2015).  Crane did not seek certiorari review in the United States Supreme Court.

On May 20, 2016, Crane filed two *pro se* motions with this court, one styled as a "Motion of Plain Error Pursuant to Federal Rules of Criminal Procedure Rule 52(b)" (Cv. Doc. # 2) and the other styled as a "Motion for Relief Pursuant to Federal Rules of Civil Procedure Rule 60" (Doc # 3).  The two *pro se* motions set forth the following laundry list of claims:

1.  Testimony regarding the large amount of methamphetamine seized in the Oklahoma traffic stop of coconspirator Phillip Burgin unfairly linked Crane to the conspiracy.

---

[2] Burgin was a corrections officer with the Alabama Department of Corrections, and testimony indicated he provided Trejo with cellular phones in prison that Trejo used to communicate instructions to members of the conspiracy.  *See, e.g.,* Cv. Doc. # 9-2 at 74–80 & 97–98.

4

2.  The Government failed to prove Crane knew that two pounds of methamphetamine were in the hidden compartment of the vehicle used in the controlled delivery of the drugs.

3.  The Government produced no photographic, audio, or video evidence proving Crane's involvement in drug dealing with coconspirator Stephanie Ausban.

4.  The Government failed to produce search warrants for Crane's auto body shop and the storage unit near his residence; thus, evidence seized from the shop and the storage unit was due to be suppressed.

5.  Currency recovered from the storage unit was wrongly attributed to Crane.

6.  Crane did not knowingly and intelligently waive his *Miranda* rights.

7.  The Government presented testimony from a "corrupt law officer."

8.  Crane was deprived of counsel of his choice and was forced to go to trial with a court-appointed attorney.

9.  Trial counsel rendered ineffective assistance by failing to (a) adequately investigate and present possible defenses, such as Crane's low IQ; (b) file motions for the defendant; (c) obtain witnesses to defend the case and introduce expert testimony; and (d) cross-examine Government witnesses.

10. Crane suffers from a low IQ and dementia, and the district court failed to consider his deficiencies when it sentenced him.

11. Crane's sentence of 200 months was greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553.

12. The statute under which Crane was convicted is defective because it did not contain language regarding a "nexus to commerce."

13. The Government did not have jurisdiction to prosecute Crane because it did not prove that Crane's actions "moved beyond the borders of the sovereign state."

14. The U.S. Attorney misrepresented the Government's jurisdiction to the grand jury, resulting in "charging instruments that were fatally defective."

15. The statute under which Crane is detained is not "positive law"; thus, his conviction and sentence are invalid.

Cv. Doc. # 2 at 2–5; Cv. Doc. # 3 at 3–9.

In an order entered on June 3, 2016 (Cv. Doc. # 4), this court informed Crane that the claims in his *pro se* motions were properly presented in a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. In accordance with *Castro v. United States*, 540 U.S. 375 (2003), the court notified Crane of its intention to treat his *pro se* motions as a § 2255 motion and directed him to advise the court whether he wished to proceed on his claims under § 2255, to amend his motion to assert additional claims under § 2255, or to withdraw his motion. Cv. Doc. # 4 at 2–3. The court's "*Castro* Order" also advised Crane that if he failed to file a response in compliance with the order's directives, the case would proceed as an action under 28 U.S.C. § 2255, with the court considering only those claims in Crane's two *pro se* motions. *Id*. at 3.

Crane filed a response to the *Castro* Order objecting to the court's recharacterization of his *pro se* motions, but his response failed to comply with the *Castro* Order's directives. Cv. Doc. # 5. Consequently, Crane was informed that the case would proceed under § 2255 on the claims in his *pro se* motions, and the Government was ordered to file a response to these claims. Cv. Doc. # 6.

On July 28, 2016, the Government filed a response arguing that (1) Crane has procedurally defaulted his substantive (i.e., non-ineffective assistance) claims by failing to

assert them on direct appeal and has shown neither cause for failing to raise the claims previously nor actual prejudice affecting a fundamental right; and (2) Crane's claims of ineffective assistance of counsel are insufficiently pled, without merit, and rest on allegations that fail to establish deficient performance and prejudice under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  Cv. Doc. # 9.

Approximately one year later, on July 31, 2017, Crane amended his § 2255 motion to add a claim that his 200-month sentence violates the Eight Amendment's cruel and unusual punishment prohibition because he suffers from mental disability and other health issues and that he is entitled to an evidentiary hearing on the issue of his mental disability. Cv. Doc. # 22.

The Government filed a response arguing that Crane's new claim (1) is time-barred by the one-year limitation period in 28 U.S.C. § 2255(f); (2) is procedurally barred because it could have been raised on appeal, but was not; and (3) is in any event without merit.  Cv. Doc. # 24.

For the reasons that follow, the court concludes that Crane's § 2255 motion should be denied without an evidentiary hearing and dismissed with prejudice.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution

or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.   *Strickland* Standard for Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the

petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate counsel may be shown if the movant can "establish . . . that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly

weaker[.]  Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

**C.     Crane's Claims of Ineffective Assistance of Counsel**

In cursory fashion, Crane claims that his trial counsel, Thomas M. Goggans,[3] rendered ineffective assistance by failing to (1) adequately investigate and present possible defenses, such as Crane's low IQ; (2) file motions for the defendant; (3) obtain witnesses to defend the case and introduce expert testimony; and (4) cross-examine Government witnesses.  Cv. Doc. # 2 at 4; Cv. Doc. # 3 at 9.  These claims are addressed below.

**1.  <u>Failure to investigate and present possible defenses.</u>**  Other than to suggest that his counsel should have presented a defense premised on his low IQ, Crane does not indicate how additional investigation would have benefited his defense.  To show prejudice based on defense counsel's alleged failure to investigate, a defendant must show what information would have been obtained from the investigation and also show it would have produced a different outcome in the proceedings.  *See Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005) (the defendant could not show "prejudice," because he failed to demonstrate specifically what further evidence would have been uncovered and how it would have affected the outcome of the trial, and instead, rested on "general allegations," which the court held were insufficient); *see also, e.g., United States v. Price*, 357 F. Supp. 2d 63, 67–68 (D.D.C. 2004).  Crane demonstrates no prejudice on his claim of failure to investigate.

---

[3] Goggans also represented Crane on appeal.

Nor does Crane indicate any other possible defenses that his counsel might have presented with successful results.   Prior to trial, Crane underwent a court-ordered psychological evaluation by a licensed psychologist at the Federal Correctional Institute in Forth Worth, Texas.  *See* Cr. Docs. # 152, 175 & 175-1.  Intelligence testing conducted as part of the evaluation indicated that Crane had a Full Scale IQ of 69.  Cr. Doc. # 175 at 5.  However, the examining psychologist concluded that Crane evidenced no signs of mental disease or defect impairing his ability to understand the nature and consequences of the proceeding against him or to assist in his defense; that Crane was knowledgeable regarding the charge and proceedings against him and appreciated the potential consequences of the charge; and that Crane was competent to stand trial.  Cr. Docs. # 175 & 175-1.  The district court accepted the conclusions of the examining psychologist and found Crane to be competent to stand trial.  Cr. Doc. # 184.

Crane's contention that his counsel should have presented some sort of "diminished capacity" defense premised on his low IQ lacks merit.  With the passage of the Insanity Defense Reform Act of 1984, *see* 18 U.S.C. § 17, Congress eliminated "any form of legal excuse based upon . . . diminished ability or failure to reflect adequately upon the consequences or nature of one's actions."  *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990)).  By so doing, "Congress 'intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other *affirmative* defense, such as that the defendant had a "diminished responsibility" or some similarly asserted state of mind which would serve to *excuse* the offense.'"  *Id*. at 1061–62.  In sum, Congress, "eliminated all other *affirmative defenses or excuses* based upon mental disease or defect"

other than insanity.  *Id*. at 1061.  A mental disease or defect alone is not a defense.  *See* 18 U.S.C. § 17(a).[4]  Therefore, Crane's counsel did not render ineffective assistance by failing to present a defense premised on Crane's low IQ.

The time and place for counsel to argue Crane's diminished mental capacity as a mitigating factor was at sentencing, and Crane's counsel did that, arguing that Crane's low IQ was among the factors warranting a below-the-guidelines sentence of 120 months—the statutory minimum, and well below Crane's calculated guidelines range of 235 to 293 months.  Cr. Doc. # 325 at 11–13.  Ultimately, the district court imposed a below-the-guidelines sentence of 200 months, stating that the downward reduction was based in part on Crane's somewhat diminished mental capacity.  *Id.* at 22–23.  Thus, counsel's presentation of a "diminished capacity" argument at sentencing succeeded in obtaining a reduced sentence for Crane, and Crane is entitled to no relief based on this claim of ineffective assistance of counsel.

**2.  <u>Failure to file motions.</u>**  Crane also asserts that his counsel was ineffective for failing to file motions on his behalf.  Cv. Doc. # 3 at 9.  Crane does not say what motions counsel should have filed.  By the time Mr. Goggans was appointed to represent Crane, the deadline for filing motions had passed.  Although Crane's previous counsel had filed a motion to suppress statements that Crane made to law enforcement, that motion was later withdrawn by previous counsel.  *See* Cr. Docs. # 115 & 119.  Crane sets forth no basis

---

[4] Under 18 U.S.C. § 17 the insanity defense is an affirmative defense.  The statute provides that, short of the standard for insanity, "[m]ental disease or defect does not otherwise constitute a defense."  18 U.S.C. § 17(a).  Crane makes no claim that his counsel should have presented an insanity defense.

upon which a motion to suppress—or any other unfiled motion—would have succeeded in his case.   Thus, he cannot prevail on his claim that his counsel rendered ineffective assistance in this regard.   *See, e.g., Green v. Nelson*, 595 F.3d 1245, 1251–52 (11th Cir. 2010) (where claim of ineffective assistance stems from counsel's failure to file a suppression motion, the defendant must show that underlying constitutional claim has merit and that there was a reasonable possibility that the verdict would have been different without the excludable evidence); *Iron Wing v. United States*, 34 F.3d 662, 665 (8th Cir.1994) (defendant is not prejudiced by counsel's failure to file a motion to suppress if it would have been denied); *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir.2000) (defendant must establish prejudice where counsel failed to file a motion).

Because Crane does not say what motions his counsel should have filed, and further fails to show that any such motion would have succeeded, Crane may have no relief based on this claim of ineffective assistance of counsel.

**3.  Failure to obtain witnesses and expert testimony.**   Crane further asserts that his counsel was ineffective for failing to obtain witnesses on his behalf and for failing to introduce expert testimony in his defense.   Cv. Doc. # 2 at 4; Cv. Doc. # 3 at 9.   Once again, Crane fails to set forth any specifics to support what are nothing more than cursory allegations.   Crane does not specify what uncalled witnesses were available to testify on his behalf, and he does not say what expert testimony he thinks should have been introduced by counsel.

Complaints about uncalled witnesses are disfavored.   *Sanders v. United States*, 314 F. App'x 212, 213 (11th Cir. 2008).   "This is especially true because allegations of what a

witness would have testified are largely speculative.  Speculation about what witnesses could have said is not enough to establish the prejudice prong of *Strickland*."  *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. 2009).  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  This claim of ineffective assistance of counsel entitles Crane to no relief.

    **4.  <u>Failure to cross-examine Government witnesses.</u>**  Finally, Crane asserts that his counsel was ineffective for failing to cross-examine Government witnesses.  Cv. Doc. # 3 at 9.  The record reflects that Crane's counsel cross-examined each testifying Government witness.  Crane does not say what further cross-examination he thinks counsel should have conducted.  He also presents nothing to suggest what additional cross-examination of Government witnesses would have proven beneficial to his defense.

    Where a court can only speculate on whether the outcome of a proceedings would have been different had defense counsel conducted further cross-examination of a witness, there is an insufficient showing of prejudice under *Strickland*.  *See Poindexter v. Mitchell*, 454 F.3d 564, 572–73 (6th Cir. 2006).  Crane proves neither deficient performance nor prejudice.  He is entitled to no relief on this claim.

**D.  Crane's Remaining Claims**

    Crane's § 2255 motion also contains more than a dozen other claims which do not involve ineffective assistance of counsel.  None of these claims were raised in Crane's

direct appeal.  *See* Cv. Doc. # 2 at 2–5; Cv. Doc. # 3 at 3–9.  In its response to Crane's § 2255 motion, and in its response to his amendment, the Government argues that these claims are procedurally defaulted because of Crane's failure to raise them on direct appeal. Cv. Doc. # 9 at 10–12; Cv. Doc. # 24 at 3–5.

Ordinarily, where a claim is not advanced in the trial court or on appeal, it is deemed procedurally barred in a § 2255 proceeding.  *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Reece v. United States*, 119 F.3d 1462, 1467 n.9 (11th Cir. 1997); *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994).  A petitioner can avoid this procedural bar by showing both cause for failing to raise the claim on direct appeal and actual prejudice arising from that failure.[5]  *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Mills*, 36 F.3d at 1055.

In his reply to the government's response to his § 2255 motion, and in his reply to the Government's response to his amendment, Crane appears to assert the ineffective assistance of his counsel—in failing to raise the claims—as cause excusing the procedural default of his non-ineffective assistance claims.  Cv. Doc. # 15 at 4–5; Cv. Doc. # 26 at 2. Ineffective assistance of counsel may satisfy the cause exception to a procedural bar, but only if the claim of ineffective assistance is meritorious.  *See Greene v. United States*, 880

---

[5] To satisfy the "cause" exception to a procedural default, a petitioner "must show that some objective factor external to the defense prevented [petitioner] or his counsel from raising his claim on direct appeal and that this factor cannot be fairly attributable to [petitioner's] own conduct."  *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004).  To establish that the cause of the procedural bar actually caused prejudice, a petitioner must show, "not merely that the error[ ] [claimed] created a possibility of prejudice, but that [it] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Unites States v. Frady*, 456 U.S. 152, 170 (1982).

F.2d 1299, 1305 (11th Cir. 1989). To determine if the claim is meritorious, a court must decide whether the arguments the petitioner alleges counsel failed to raise were significant enough to have affected the outcome of the proceedings. *See Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).

Crane's remaining claims are addressed below.

**1. Drugs seized in traffic stop of Burgin.** Crane asserts that testimony regarding the large amount of methamphetamine seized in the Oklahoma traffic stop of coconspirator Phillip Burgin unfairly linked him to the conspiracy. Cv. Doc. # 2 at 2. However, testimony about Burgin's arrest while transporting methamphetamine from California to Alabama in furtherance of the drug conspiracy was clearly relevant to the charge against Crane and did not "unfairly" link Crane to the conspiracy. Indeed, Burgin was transporting drugs secreted in a hidden compartment of a vehicle modified by Crane to facilitate the delivery of the drugs. There was no basis for Crane's counsel to object to admission of the testimony about the methamphetamine found in the vehicle Burgin was driving. Because this argument by Crane has no merit, Crane's counsel did not perform deficiently by failing to raise it. As such, Crane does not demonstrate cause excusing this procedural default.

**2. Knowledge of drugs in controlled delivery.** Crane also argues that the Government failed to prove he knew that two pounds of methamphetamine were in the hidden compartment of the vehicle used in the controlled delivery of the drugs. Cv. Doc. # 2 at 2–3. Substantial evidence, however, indicated that Crane knew of the presence of the drugs in the vehicle during the controlled delivery, including, but not limited to, Stephanie Ausban's testimony regarding the circumstances of the controlled delivery and

other testimony that Crane told officers following his arrest that he intended to use the money in the bag recovered at the scene to buy the methamphetamine in the vehicle driven by Ausban.  Crane's argument has no merit, and his counsel did not perform deficiently by failing to raise it. Crane therefore does not demonstrate cause excusing this procedural default.

**3.   Lack of photographic, audio, and video evidence.**   Crane asserts that the Government produced no photographic, audio, or video evidence proving his involvement in drug dealing with Ausban.  Cv. Doc. # 2 at 3.  However, the Government presented substantial evidence of Crane's drug dealing with Ausban, through the testimony of Ausban and the testimony of law enforcement officers who monitored the controlled delivery.  There was also testimony that Crane admitted his participation in drug dealing. There is no reasonable probability that the outcome of the proceeding would have been different had Crane's counsel presented an argument that the Government was required to produce photographic, audio, and video evidence to prove Crane's involvement in drug dealing with Ausban.  Counsel did not perform deficiently by failing to present such an argument, and Crane does not demonstrate cause excusing this procedural default.

**4.   Warrants for searches of auto body shop and storage unit.**   Crane maintains that the Government failed to produce search warrants for his auto body shop and the storage unit near his residence; therefore, he says, the evidence seized from the shop and the storage unit was due to be suppressed.  Cv. Doc. # 2 at 3.  Crane, however, does not establish the necessity of a search warrant for the seizure of the drug evidence and currency recovered during his arrest in the controlled delivery to the auto body shop, and testimony

indicated that officers obtained Crane's consent to search the storage unit where $47,395 in currency was found. *See* Cv. Doc. # 9-2 at 116–17. If, as Crane alleges without presenting proof, the storage unit belonged to Crane's girlfriend and Crane had no authority to consent to its search (*see* Cv. Doc. # 2 at 3), Crane would lack standing to challenge the legality of the search. To have standing to challenge a search, a defendant must have a legitimate expectation of privacy in the area searched. *United States v. Brazel*, 102 F.3d 1120, 1147–48 (11th Cir. 1997). Crane demonstrates no reasonable probability that challenges to the searches of the auto body shop and storage unit would have succeeded and led to the suppression of evidence. Crane's counsel did not perform deficiently by failing to assert such challenges, and Crane does not demonstrate cause excusing this procedural default.

**5.  Currency recovered from storage unit.** Crane claims the currency recovered from the storage unit after his arrest belonged to his girlfriend and was wrongly attributed to him, thereby "compromising the jury's view of his 'alleged' involvement" in the conspiracy. Cv. Doc. # 2 at 3. Testimony at trial, however, reflected that Crane admitted to investigators following his arrest that the money found in the storage unit was proceeds from his methamphetamine dealing, which he said he would also use to pay for methamphetamine that he then resold. Cv. Doc. # 9-2 at 128. Crane's counsel did not perform deficiently by failing to assert Crane's present argument at trial, and Crane does not demonstrate cause excusing this procedural default.

6.   **Waiver of *Miranda* rights.**   Crane asserts that he did not knowingly and intelligently waive his *Miranda* rights.[6]  Cv. Doc. # 2 at 3.  He maintains that his medical conditions—specifically, his low blood-sugar levels and high blood pressure—and his low IQ "highly prejudiced him during the investigation" and that he was tricked into waiving his rights, because "he was told he was signing another form."  *Id.*

To be valid, a waiver of *Miranda* rights must have been (1) "voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception"; and (2) "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  Crane presents no evidence to support his bare allegation that he was tricked into signing the form waiving his *Miranda* rights.  Thus, he does not demonstrate that his waiver was involuntary, i.e., the product of intimidation, coercion, or deception.  *See Moran*, 475 U.S. at 421; *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  Nor does Crane, through his cursory assertions, show that his low blood-sugar levels and high blood pressure caused him to waive his rights without an awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them.  *Moran*, 475 U.S. at 421.

Finally, the mere fact of a defendant's below average IQ does not render him per se incapable of knowingly and intelligently waiving his *Miranda* rights. *See, e.g., United States v. Robinson*, 404 F.3d 850, 861 (4th Cir.2005); *Bone v. Polk*, 441 F. App'x 193,

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

196–97 (4th Cir. 2011).  At trial, Kevin Gentry, a DEA task force agent who assisted in monitoring the controlled delivery of the drugs, testified that he advised Crane of his *Miranda* rights at the time of his arrest in the auto body shop.  Cv. Doc. # 9-2 at 65.  According to Gentry, Crane was fully cooperative when questioned at the scene.  *Id.* at 65 & 68.   Gentry testified that, during questioning, Crane acknowledged that the methamphetamine found in his pocket was his and that he had retrieved the currency found in a cloth bag nearby from a storage unit and had intended to use it to buy the methamphetamine in the vehicle driven by Ausban.  *Id.* at 65–66.  Also at trial, Jeff Bain, an investigator with the Dekalb County Sheriff's Office, testified that he interviewed Crane at the sheriff's office the day after his arrest.  *Id*. at 118–19.  Bain testified that he advised Crane of his *Miranda* rights and Crane acknowledged that he understood his rights.  *Id*. at 120.  Crane also executed a waiver form and signed the form after Bain explained each right he was waiving, indicating that he understood his rights and was willing to talk to investigators without counsel present.  *Id*. at 120–24.  After waiving his rights, Crane gave a statement to Bain explaining in detail his participation in the drug-dealing conspiracy, including his construction of hidden compartments in vehicles used to transport the drugs.  *Id*. at 124–31.  Bain testified that Crane did not mention his blood-sugar level or high blood pressure during questioning.  *Id.* at 132.

Here, nothing in the record indicates that Crane did not understand his *Miranda* rights as Gentry and Bain provided them or the consequences of the decision to waive them.  Thus, Crane does not meet his burden of proving that he did not knowingly and intelligently waive his *Miranda* rights.  Crane demonstrates no reasonable probability that

a challenge to his waiver of his *Miranda* rights on this ground would have succeeded. Where a petitioner alleges that counsel was ineffective for failing to move to suppress evidence, the petitioner must show that the suppression claim has merit. *See Green*, 595 F.3d at 1251–52. Crane does not show that his counsel was ineffective for failing to assert a challenge to his waiver of his *Miranda* rights; thus, Crane does not demonstrate cause excusing this procedural default.

**7. Testimony from "corrupt law officer."** Crane says the Government presented testimony from a "corrupt law officer." Cv. Doc. # 2 at 3–4. He alleges, without providing any supporting evidence, that investigator Bain "was told to retire or be fired for his corruption" and that Bain forged the signature of another agent on some unspecified document. *Id*. Crane wholly fails to demonstrate that Bain testified falsely at his trial or engaged in any dishonest conduct that affected the outcome of his case. Crane's counsel was not ineffective for failing to assert this claim, and Crane does not demonstrate cause excusing this procedural default.

**8. Right to counsel of choice.** Crane argues that he was deprived of the counsel of his choice and was "forced" to go to trial with a court-appointed attorney. Cv. Doc. # 2 at 4. Prior to trial, Crane's retained counsel was allowed to withdraw from representation based on health problems he was experiencing. *See* Cr. Docs. # 174 & 176. At that time, the court appointed Mr. Goggans to represent Crane in further proceedings. Approximately two months later, the week prior to trial, Goggans moved to withdraw as Crane's counsel based on Crane's expressed dissatisfaction with him. Cr. Doc. # 233. Following an ex parte hearing on Goggans's motion, the court denied his motion to withdraw. Cr. Docs. #

21

234–35.  There is no evidence that Crane sought to obtain or was prevented from obtaining different counsel following the court's appointment of Goggans as his attorney.  Crane's counsel-of-choice claim has no merit and it does not serve as cause for any procedural default.

**9.  <u>Consideration of mental deficiencies at sentencing</u>.**  Crane cursorily maintains that he suffers from a low IQ and dementia and that the district court failed to consider these mental deficiencies when it sentenced him.  Cv. Doc. # 2 at 4.  As indicated above, Crane's counsel argued at sentencing that Crane's low IQ was among the factors warranting a sentence of 120 month, the statutory minimum. Crane does not now present any evidence supporting his assertion that he is suffering from dementia.  The district court imposed a below-the-guidelines sentence of 200 months and stated that the downward reduction was based in part on Crane's age and his somewhat diminished mental capacity.  There is no merit to Crane's claim that the district court failed to consider his mental deficiencies when it sentenced him, and Crane fails to demonstrate cause excusing this procedural default.

**10.  <u>Compliance with 18 U.S.C. § 3553</u>.**  Crane asserts that his sentence of 200 months was greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553.  Cv. Doc. # 2 at 4.  He suggests there was a disparity in the sentence he received and the sentences of his coconspirators, who he says were more culpable in their roles in the conspiracy.  *Id*.  Crane does not set forth specific facts regarding the sentences imposed on his coconspirators, nor does he make any attempt to show how coconspirators more culpable than he received sentences that were substantially lower than the one imposed on

22

him.  Crane fails to demonstrate that his counsel was ineffective for failing to assert this claim; thus he fails to demonstrate cause excusing his procedural default.

   **11.   Defects in statute and charging instrument and "jurisdictional" claims.**

Crane presents various claims asserting defects in the statute under which he was convicted and in the indictment under which he was charged, as well as claims premised on the Government's supposed lack of jurisdiction to try and convict him.

   First, Crane alleges that the statute under which he was convicted is "defective" because it "contains no language as incorporating a 'nexus to commerce.'"  Cv. Doc. # 2 at 4–5; Cv. Doc. # 3 at 6–7.  Crane was convicted of conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  It is well settled that no specific nexus with interstate commerce is required for prosecution and conviction under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. *See, e.g., United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993); *United States v. Fernandez*, 388 F.3d 1199, 1219 (9th Cir. 2004); *United States v. Scales*, 464 F.2d 371, 373–74 (6th Cir. 1972).  Thus, there is no merit to Crane's argument that language referring to a "nexus to commerce" was required in the statute under which he was convicted.

   Next, Crane claims that the Government did not have jurisdiction to prosecute him because it did not prove his actions "moved beyond the borders of the sovereign state." Cv. Doc. # 2 at 5; Cv. Doc. # 3 at 3-6.  Crane's underlying argument for this claim—to the extent it is understandable—appears to be that the federal government may criminalize only conduct that occurs on land or property owned by the federal government, and that because he was charged with committing acts that took place on land under the jurisdiction

of a state or states, the federal government and its courts did not have jurisdiction to prosecute him for his crimes.  This "territorial jurisdiction" argument is frivolous. By the terms of the Constitution and the relevant federal statutes, the district court had jurisdiction over the offense for which Crane was convicted.

The Constitution of the United States gives Congress the power to create inferior federal courts and determine their jurisdiction.  U.S. Const. art. III, § 1.  Under Article III, § 2, cl. 1, of the Constitution, federal courts have jurisdiction in all cases "arising under" the constitution and laws of the United States.  Moreover, pursuant to 18 U.S.C. § 3231, federal district courts have original jurisdiction, "exclusive of the courts of the States, of all offenses against the laws of the United States."  *See Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir.2000); *see also, e.g., United States v. Russell*, 30 F. App'x 348, 351 (6th Cir. 2002).  Further, Article I, § 8, of the Constitution empowers Congress to create, define and punish crimes, irrespective of where they are committed.  *See United States v. Worrall*, 2 U.S. (2 Dall.) 384, 393 (1798) (Chase, J.); *United States v. Collins*, 920 F.2d 619, 629 (10th Cir.1990). The Seventh Circuit has succinctly responded to claims of the sort made by Crane:

> Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts.  That's the beginning and the end of the "jurisdictional" inquiry.

*Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999).

A federal district court's jurisdiction under 18 U.S.C. § 3231 is not limited to crimes occurring on federally owned property.  *See, e.g., McClurkin v. United States*, 922 F.2d

24

843 (7th Cir.1990); *United States v. Mundt*, 29 F.3d 233, 237 (6th Cir.1994); *Cantrell v. Reno,* 36 F. App'x 651 (1st Cir. 2002); *see also Prou v. United States*, 199 F.3d 37, 45 (1st Cir.1999) ("a federal district court plainly possesses subject-matter jurisdiction over drug cases"); *United States v. Lussier*, 929 F.2d 25, 26 (1st Cir.1991) (rejecting "territorial jurisdiction" argument).   Crane's argument ignores the basic principle of federalism embodied in the Constitution of the United States.   The fact that the separate states have sovereignty within their boundaries does not bar the United States from having concurrent jurisdiction to indict and prosecute a defendant for federal crimes occurring within those same boundaries. *See, e.g., United States v. Hamilton*, 263 F.3d 645, 655–56 (6th Cir. 2001).   Crane was prosecuted for violations of the criminal laws of the United States. Because the state or states where Crane's underlying criminal offense occurred are within the jurisdiction of the United States and his offense violated validly enacted federal statutes, the district court's jurisdiction to enter rulings and judgment of conviction against Crane lay squarely within the original jurisdiction conferred under 18 U.S.C. § 3231.   For this reason, Crane's "territorial jurisdiction" claim has no basis in law.

Crane also claims that the U.S. Attorney misrepresented the Government's jurisdiction to the grand jury, resulting in "charging instruments that were fatally defective."   Cv. Doc. # 2 at 5; Cv. Doc. # 3 at 6–8.   This claim appears to be premised on Crane's two previously discussed claims, neither of which—as stated—has merit.   Crane's "nexus to commerce" claim lacks merit, as does his territorial jurisdiction claim.   The indictment in Crane's case states an offense against the laws of the United States, tracking the language of the applicable statutes and setting forth the essential elements of the crime.

The U.S. Attorney did not "misrepresent" the Government's jurisdiction to the grand jury, and the indictment was not defective, fatally or otherwise.

Crane alleges that the statute under which he is detained is not "positive law" and that his conviction and sentence are therefore invalid.  Cv. Doc. # 3 at 8–9.  Crane's argument in support of this allegation is mostly impenetrable, but it seems premised on the assertion that the adjournment between the first and second sessions of the 80th Congress in 1948 resulted in the evisceration of the entire federal criminal system.  Similar claims, when more squarely presented, have repeatedly been rejected by the courts.  *See, e.g., United States v. Abdullah,* 289 F. App'x 541, 543 n.1 (3d Cir. 2008); *Garcia v. United States*, 2009 WL 2781740, at *4–5 (M.D. Fla. 2009); *United States v. Chillemi*, 2007 WL 2995726, at *6–10 (D. Ariz. 2007); *United States v. Hawkins*, 2009 WL 585477, at *2 (M.D. Pa. 2009) (collecting cases).  Here, Crane presents no meritorious claim that entitles him to any relief.

**12.   Cruel and unusual punishment and *Atkins*.**  On July 31, 2017, Crane amended his § 2255 motion to add a claim, premised on *Atkins v. Virginia*, 536 U.S v. 304 (2002), that his 200-month sentence violates the Eight Amendment's cruel and unusual punishment prohibition because he suffers from mental disability and other health issues and that he is entitled to an evidentiary hearing on the question of his mental disability.  Cv. Doc. # 22.  In *Atkins*, the Supreme Court held that executing mentally retarded defendants violates the Eight Amendment's prohibition on cruel and unusual punishment.  *See* 536 U.S at 321.  The Government argues that Crane's new claim (1) is time-barred by

the one-year limitation period in 28 U.S.C. § 2255(f);[7] (2) is procedurally barred because it could have been raised on appeal, but was not; and (3) is without merit in any event.  Cv. Doc. # 25.

As a general rule a § 2255 motion, and all claims for relief under § 2255, must be filed within a year of the date on which the petitioner's judgment of conviction becomes final.  *See* 28 U.S.C. § 2255(f)(1).  Regarding this limitation period, the Supreme Court has stated that "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."  *Clay v. United States*, 537 U.S. 522, 525 (2003).  The time for seeking certiorari review in the Supreme Court expires 90 days after entry of judgment by the appellate court.  *See* Rule 13, Rules of the Supreme Court of the United States.  Crane's direct appeal was decided by the Eleventh Circuit on December 7, 2015.  Ninety days from that date is March 6, 2016.

---

[7] The timeliness of a § 2255 motion is governed by 28 U.S.C. § 2255(f), which provides:

A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by Governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such Governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Therefore, any motion or claim by Crane seeking relief under § 2255 must have been filed by March 6, 2017.  Crane's construed § 2255 motion was timely filed on May 20, 2016. He filed the amendment to his § 2255 motion on July 31, 2017—147 days after expiration of the limitation period in § 2255(f)(1).

The Federal Rules of Civil Procedure provide for the relation back of amendments filed after the running of a period of limitation in certain circumstances.  Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  *See* Fed.R.Civ.P. 15(c)(2).  "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed."  *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).  However, "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts."  *Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001).  This is so the Government has sufficient notice of the facts and claims giving rise to the proposed amendment.  *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (quoting *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000)).  An untimely amendment to a § 2255 motion does not relate back to the date of the original motion where it "seek[s] to add a new claim or to insert a new theory into the case."  *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (emphasis omitted).

Here, Crane's new claim—that, in light of *Atkins*, his sentence violates the Eight Amendment's prohibition against cruel and unusual punishment—bears no legal or factual relationship to his earlier claims and inserts a new theory of relief into the case.  Therefore, the new claim does not relate back under Rule 15(c) to claims in his original and timely § 2255 motion.  Because this claim does not relate back, it is time-barred under § 2255's one-year limitation period.  *See Farris v. United States*, 333 F.3d 1211, 1215–16 (11th Cir. 2003); *Pruitt*, 274 F.3d at 1319.

As the Government also argues, Crane's cruel-and-unusual-punishment claim is procedurally barred because it could have been raised on appeal, but was not.  *See* Cv. Doc. # 24 at 3–5.  And if it is Crane's contention that his counsel was ineffective for failing to raise the cruel-and-unusual-punishment claim and that such ineffectiveness is "cause" excusing his procedural default (*see* Cv. Doc. # 26 at 2), Crane nevertheless shows no merit in this claim.  Crane predicates the claim on the Supreme Court's *Atkins* holding that execution of a mentally retarded defendant violates the Eight Amendment's prohibition against cruel and unusual punishment.  He even requests that the court "award him an *Atkins* Evidentiary Hearing to better ascertain his claim of mental disability."  Cv. Doc. # 22 at 6.  However, Crane does not, and cannot, point to any case law holding that *Atkins* applies to sentences other than ones where the death penalty has been imposed. Crane's claim for relief under *Atkins* has no merit, and his counsel did not perform deficiently by failing to raise it. Crane therefore does not demonstrate cause excusing this procedural default.

## III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Crane be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before November 12, 2018.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

Done this 29th day of October, 2018.

_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

30